UNITED STATES of America,
Plaintiff-Appellant,

v.

James Henry CEDERQUIST; Thomas G. Anderson; Donald Lee Federspiel; Hallcraft Homes, Inc., presently existing by reason of a merger as Nu-West Development Corporation of Arizona; Hallcraft Homes of Denver, Inc.; Hallcraft Homes of San Diego, Inc.; and Hallcraft Homes of Los Angeles, Inc., Defendants-Appellees.

No. 80–1018.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 7, 1980.

Decided April 16, 1981.

Dale Danneman, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellant.

Tom Karas, Phoenix, Ariz., argued for defendants-appellees; Stephen E. Silver, Phoenix, Ariz., on brief.

Before GOODWIN and ANDERSON, Circuit Judges, and SWEIGERT,* District Judge.

**J. BLAINE ANDERSON, Circuit Judge:**

The district court dismissed the indictment against the defendants on the bases of prejudicial pre-indictment delay and prosecutorial misconduct before the grand jury. The government appeals those determinations. We now reverse.

## I. FACTS

On December 28, 1978, a federal grand jury returned a fifteen-count indictment against four corporations—Hallcraft Homes, Inc., presently existing by reason of a merger as Nu-West Development Corporation of Arizona, Hallcraft Homes of Denver, Hallcraft Homes of San Diego, and Hallcraft Homes of Los Angeles (who will be collectively referred to as Hallcraft), and three individuals who served as officers and employees of those corporations—James Cederquist, Thomas Anderson, and Donald Federspiel. Each count of the indictment charged mail fraud, 18 U.S.C. § 1341, and aiding and abetting, 18 U.S.C. § 2. The indictment alleged that the defendants made use of the mails to defraud various

banks through the operation of a check kiting scheme.

The purported scheme was alleged to have begun in October of 1973 and to have continued until the 16th of April, 1974. The United States Attorney's office was informed by the First National Bank of Arizona of a possible check kiting scheme by Hallcraft and its three subsidiaries on or about March 21, 1974. Grand jury subpoenas were issued to various lending institutions and the principal corporate defendants for records concerning, among other things, accounts, transactions, and loans involving Hallcraft. The subpoenas were issued in September of 1975; November of 1977; and December of 1977. After testimony was presented to the grand jury on December 27 and 28, 1978, an indictment was returned on December 28, 1978.

The defendants subsequently filed motions to dismiss the indictment because of pre-indictment delay and prosecutorial misconduct before the grand jury. Both motions were granted by the district court.[1]

## II. DISCUSSION

### A. *Pre-indictment Delay*

In determining whether a due process violating pre-indictment delay has

---

* The Honorable William T. Sweigert, Senior United States District Judge for the Northern District of California, sitting by designation.

1. The district court ruled that:

   "One of the Constitutional requirements is the use of a grand jury in charging persons with crimes, and the reason has been well stated as placing between the accuser and the accused a buffer who may independently review what the accuser proposes before charging the accused.

   "In the circumstances of this case, it's the conclusion of the Court there was an abuse of prosecutorial discretion by the particular prosecutor in his presentation, because the entire atmosphere of the presentation before the grand jury indicates to this Court that the prosecutor had already concluded the issue as to the guilt or innocence of the targeted individuals. And that impression was conveyed to the grand jury through the nature and form of the questions asked and the statements made by the prosecutor.

   "Indeed, it seems to the Court that the presentation of an indictment already prepared prior to the conclusion of the presentation

to the grand jury was an added influence exerted on the grand jury to the effect that these people, whoever they might have been, in the mind of the prosecutor, were probably guilty and should be charged. And that, it seems to the Court, goes beyond the function of a prosecutor, and indeed, goes beyond the function of the grand jury.

"All the grand jury is required to do is to look at the law and the facts as presented by the prosecutor in the course of the grand jury investigation, and reach a conclusion whether or not there is probable cause to believe that a crime was committed, and probable cause to believe that the targeted individuals committed the crime. And that process, in the totality of the circumstances of this case, was not properly carried out.

"And it seems to this Court that the Constitutional rights of the individuals and the companies involved here were thereby violated, and the indictment will be dismissed for *prosecutorial indiscretion and misconduct in the presentation of the case to the grand jury.*

"On the second issue, with respect to the delay, and in view of the fact that the Government failed to produce the records

occurred, three factors must be considered: (1) the actual prejudice caused to the defendants, (2) the length of the delay, and (3) the reason for the delay. *United States v. Mays*, 549 F.2d 670, 677–678 (9th Cir. 1977). Actual prejudice must be shown by the defendant as it is a prerequisite to finding a due process violation. *United States v. West*, 607 F.2d 300, 304 (9th Cir. 1979).

Where the claim is that evidence has been lost due to the delay, the defendant must demonstrate by definite proof that the loss is prejudicial to him. *Id.* This means that a defendant must at least show that the loss of the witness or documentation "has actually impaired his ability meaningfully to defend himself." *United States v. Pallan*, 571 F.2d 497, 501 (9th Cir.), *cert. denied*, 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411 (1978).

The defendants claim that actual prejudice occurred because documentary evidence pertaining to substantial loans in process became unavailable due to the preindictment delay. They correctly stated that 18 U.S.C. § 1341 requires proof of specific intent to defraud. *Williams v. United States*, 278 F.2d 535, 537 (9th Cir. 1960). Thus "[e]ven where [a] defendant has knowledge of [a] lack of funds at the time the check is drawn, fraudulent intent is negatived by proof that he had a reasonable expectation that deposits would cover the check at the time it was presented for payment." *Id.* The defendants contend that the missing documents concerned loans in process and would have proved that they had a reasonable expectation that the checks would be covered before the checks were presented for payment. Thus they claim their ability to establish their defense of lack of fraudulent intent was prejudiced.

The government does not disagree that the lack of fraudulent intent would provide a defense to the charges. However, the government contends that proof that the loans were in process or that the missing documents even existed is indefinite and speculative.

The district court found the delay from 1974 to 1978 to be unconscionable and prejudicial "because the records that would have proved their position were no longer available." The district court's decision was also based in part upon the government's failure to produce records under a subpoena issued to Postal Inspector Smith.[2]

The alleged missing documents may have provided the best means of proving their contentions that they had a reasonable expectation that loans would be granted. However, as the briefs of the defendants indicate, there are substitutes for the documents. The defendants' briefs refer to grand jury testimony by Postal Inspector Smith concerning a memo by First National Bank employee Lundquist, regarding a meeting held with the defendants on March 20, 1974. The meeting apparently concerned the defendants' overdraft situation and anticipated loans. The defendants also point to further grand jury testimony of Smith regarding a Lundquist memo of a March 21, 1974 meeting between the defendants and representatives of First National Bank, Colorado National Bank, and Union Bank. Apparently, at that meeting the defendants' overdraft situation and pending or anticipated loans to Hallcraft were also discussed.

under the subpoena, the Court will assume that the records were, as counsel has represented them to be, and that the delay from early 1974 to late 1978 was unconscionable and prejudicial to the defendants, and because the records which would support their position are no longer available—I don't know about the witnesses, whether their memories are dim or not, because I haven't heard those; but the records aren't available. And, therefore, the Court finds that the pre-

indictment delay was prejudicial to the defendants and each of them.

"The Court will stand adjourned."

(R.T. 63–65).

2. Smith had been subpoenaed three days prior to the hearings on the motions to dismiss. The subpoena ordered Smith to produce all records subpoenaed by the grand jury during its investigation.

We do not mean to suggest by the above discussion that those memos alone would demonstrate that there were loans in process. However, it does show that the alleged missing documents were not the only means by which the defendants could have presented their defense. For example, the defendants have not alleged that representatives of the various banks at the meetings of March 20 and 21, 1974, are no longer able to give testimony concerning those meetings. Nor have the defendants alleged that bank representatives with whom they dealt, in regard to the alleged loans in process, are unable to give testimony concerning those loans in process.

The dispositive issue is not whether the delay caused certain documents to become unavailable, but whether the delay has actually impaired the ability of the defendants to meaningfully present their defense. We determine that the district court erred in concluding that the defendants had established actual prejudice by the preindictment delay.

■■ In reaching its decision on the motion for preindictment delay, the district court also ruled that "in view of the fact that the Government failed to produce the records under the subpoena [to Postal Inspector Smith], the Court will assume that the records were, as counsel has represented them to be, . . ." (R.T. 64). Without deciding whether a district court may impose such sanctions in a criminal proceeding, we determine that the district court erred in the present case.

The government, in its motion to quash the subpoena, stated that the subpoenaed material was not in Smith's custody or control, but rather had long ago been turned over to the office of the United States Attorney. There is no indication in the record that the subpoenaed material was in the custody or control of Smith, and the district court made no finding to that effect.

Under Rule 17(g) of the Federal Rules of Criminal Procedure, noncompliance with a subpoena is deemed a contempt of court. However, before a person can be found in contempt, it must be shown that he had the ability to comply with the subpoena. *United ed States v. Jacobs*, 322 F.Supp. 1299, 1302 (C.D.Cal.1971). Even assuming that the district court could properly impose the type of sanction it did, no showing was made that Smith had the ability to comply with the subpoena. Thus there was no basis for the district court's sanction.

### B. *Prosecutorial Misconduct Before the Grand Jury*

■ The task of a grand jury is to evaluate the law and facts presented to them and determine whether there is probable cause to believe that the charges brought against the defendant are true, such that the defendant should stand trial. *Bracy v. United States*, 435 U.S. 1301, 1302, 98 S.Ct. 1171, 1172, 55 L.Ed.2d 489 (Rehnquist, Circuit Justice, 1978). "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial on the merits. The Fifth Amendment requires nothing more." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1955).

■ An indictment may be dismissed for prosecutorial misconduct before the grand jury. The dismissal may be based upon the Fifth Amendment Due Process Clause, *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974), or upon the court's inherent supervisory powers. *United States v. Chanen*, 549 F.2d 1306, 1309 (9th Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). While the goal in either case is to protect the integrity of the judicial process, the constitutionally-based independence of grand juries and prosecutors necessarily limits a court's review of grand jury proceedings. *See United States v. Chanen*, 549 F.2d at 1312–1313. Consequently, we have ruled that the "[d]ismissal of an indictment is required only in fla-

grant cases in which the grand jury has been overreached or deceived in some significant way .... " *United States v. Thompson*, 576 F.2d 784, 786 (9th Cir. 1978). It must be shown that the prosecutor's conduct significantly infringed upon the ability of the grand jury to exercise its independent judgment. *See United States v. Chanen*, 549 F.2d 1310–1311; *United States v. Samango*, 607 F.2d 877, 884 (9th Cir. 1979); *United States v. Wells*, 163 F. 313, 325–329 (D. Idaho 1908).

After a thorough review of the record, including the grand jury transcripts, we are convinced that the dismissal of the indictment was not justified.

▆▆▆ Here, the district court in essence determined that the prosecutor's conduct had created a biased grand jury. The district court stated that the entire atmosphere of the grand jury presentation was such that the prosecutor's impression as to the guilt or innocence of the defendants had been conveyed to the grand jury. Grand jurors, as a practical matter, however, are aware that a case is being presented to them because the prosecutor feels that an indictment is warranted. Thus the fact that a prosecutor conveys such an impression to the grand jury does not require the dismissal of the indictment.

▆▆▆ The district court also stated that the submission of a proposed indictment to the grand jury prior to the close of testimony contributed toward influencing the grand jury to indict the defendants. However, in *United States v. Chanen*, 549 F.2d at 1312, we recognized and implicitly approved the procedure in which the prosecutor prepared the indictment for the grand

jury, as long as the grand jury had reviewed the indictment and adopted it as its own. The fact that the indictment here was presented to the grand jury prior to the close of the testimony is not significant. There is no indication in the record that the grand jury did not review and adopt the indictment as its own.[3]

▆▆▆ The defendants argue that the use of the words "kite," "check-kite" or "check-kiting" by the prosecutor to describe the banking transactions in question biased the grand jury in favor of returning the indictment. We perceive no demonstrated prejudice from the mere use of such words. *See United States v. Polizzi*, 500 F.2d 856, 887–888 (9th Cir. 1974). We should not engage in any presumption that an indictment is returned based upon the mere use of commonly used elliptical expressions of methods or schemes used to violate the criminal laws, such as check-kiting. Rather, unless otherwise shown, we must presume that the grand jury observed its duty and obligation and based its decision to return a true bill upon the evidence presented to it by the United States Attorney. We must here, as in other situations, *see United States ·v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), take a common sense, practical, case-by-case approach to the conduct of the proceedings before the grand jury.

▆▆▆ Taken as a whole, the circumstances of this case did not require the dismissal of the indictment for prosecutorial misconduct. As a matter of law, the conduct of the prosecutor before the grand jury did not violate the constitutional rights of the defendants and there was no clear basis in fact and law for the exercise of the district

---

**3.** The district court also seemed to be concerned that the prosecutor may not have presented exculpatory evidence to the grand jury. However, a grand jury investigation is not an adversary proceeding and the failure of the prosecution to bring forth evidence favor-

able to the defendants does not present a basis to dismiss an indictment. *United States v. Kennedy*, 564 F.2d 1329, 1337–1338 (9th Cir.), *cert. denied, sub nom., Meyers v. United States*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978).

court's supervisory powers.[4]  *United States v. Chanen*, 549 F.2d at 1313.

## III. CONCLUSION

The dismissal of the indictment is RE-VERSED.

SWEIGERT, Senior District Judge, dissenting:

I dissent.  At this distance the finding of the District Judge that: "the delay from early 1974 to late 1978 was unconscionable and prejudicial to the defendants because the records which would support their position are no longer available", Minute Order, *United States of America v. James H. Cederquist, et al., (Hallcraft)* No. 78 418 (D. Arizona, July 13, 1979), should not be labeled clearly erroneous.

Accordingly, I would vote to affirm the dismissal of the indictment.

4.  We remind government counsel that they "should not, however, take advantage of [the] role as an ex parte representative of the [government] before the grand jury to unduly or unfairly influence it in voting upon charges brought before it.  In general [government counsel], should be guided by the standards governing and defining the proper presentation of the [government's] case in an adversary trial before a petit jury."  A.B.A., Standards Relating to the Prosecution and Defense Function, Final Draft No. 3.5, Commentary.