UNITED STATES of America ex rel. Alexander McLAREN, Petitioner,

v.

James W. FAIRMAN, et al., Respondents.

No. 80 C 6557.

United States District Court, N. D. Illinois, E. D.

Feb. 2, 1982.

Frank H. Brady, Jr., Dry & Brady, Chicago, Ill., for petitioner.

Marcia Friedl, Asst. Atty. Gen., State of Ill., Chicago, Ill., for respondents.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Alexander McLaren ("McLaren"), an inmate at Pontiac Correctional Center ("Pontiac"), has brought this 28 U.S.C. § 2254 ("Section 2254") habeas corpus action

against Pontiac Warden James W. Fairman.[1] McLaren claims his Illinois state court conviction and sentencing violated his federal constitutional rights[2] in four respects:

(1) McLaren was represented by ineffective trial and appellate counsel, in violation of his Sixth Amendment right to assistance of counsel.

(2) Because the state failed to prove McLaren guilty beyond a reasonable doubt, the conviction violated his due process rights.

(3) McLaren's 20 to 30 year sentence was so excessive as to be "cruel and unusual punishment" under the Eighth Amendment.

(4) Presumably as another due process claim, the trial court erred in allowing two defense witnesses to invoke their Fifth Amendment privileges against self-incrimination.

Fairman has moved to dismiss all claims or for summary judgment.[3] Though that motion is inapt at least in part, McLaren's petition is denied for the reasons stated in this memorandum opinion and order.

*People v. McLaren*, 77 Ill.App.3d 368, 32 Ill.Dec. 838, 395 N.E.2d 1219 (1st Dist. 1979) states the facts in some detail. McLaren was convicted of murdering James Martinez outside a tavern on Chicago's near southwest side in the early morning hours of June 2, 1974. McLaren and several cronies had seen Martinez and another young man walking down the street, and McLaren used a gun voluntarily given to him by one of his cronies (either Juan Perea or Jorge Roman) to shoot and kill Martinez. Although the Appellate Court said, "The evidence indicates that the slaying was motivated primarily by racial hatred," 77 Ill.App.3d at 375, 32 Ill.Dec. at 37, 395 N.E.2d at 1224,

McLaren's purpose is unclear from the facts stated in the opinion.

■ McLaren's ineffective assistance of counsel contention is predicated on the failure to (1) call certain key witnesses, (2) raise pertinent facts from a preliminary hearing and (3) file timely appeals. Those claims cannot be asserted here because McLaren has not exhausted available state remedies under the Illinois Post-Conviction Act (the "Act"), Ill.Rev.Stat. ch. 38, §§ 122–1 to 122–7.

*People v. James*, 46 Ill.2d 71, 263 N.E.2d 5 (1970) held that a judgment on direct appeal from an Illinois state court conviction is (1) *res judicata* as to all issues presented to the reviewing court and (2) a waiver as to all issues that could have been but were not raised on appeal. McLaren did appeal his conviction but did *not* raise the ineffective assistance claim. Ordinarily the waiver branch of *James* would mean the Act was unavailable, so federal habeas would lie.

Here however that result does not obtain for two reasons:

(1) *United States ex rel. Williams v. Israel*, 556 F.2d 865, 866 (7th Cir. 1977) suggests that under Illinois law an ineffective counsel claim "based in substantial part on evidence outside the record" is never waived for purposes of the Act. McLaren does rely on non-record evidence.

(2) McLaren was represented by the same lawyer at both the state trial and appellate levels. Under those circumstances *People v. McClain*, 15 Ill.App.3d 929, 933, 305 N.E.2d 423, 426 (1st Dist. 1973) should permit McLaren to invoke

---

1. This Court expresses its thanks to Frank H. Brady, Jr., who served as appointed counsel for McLaren and presented petitioner's arguments in the best light possible.

2. All McLaren's claims are perforce grounded in the Fourteenth Amendment. Conforming to customary usage, this opinion will nonetheless refer directly to the Bill of Rights provisions effectively incorporated into the Fourteenth.

3. Illinois' Attorney General deals with federal habeas cases in massive numbers, yet persists in motion practice that the Supreme Court has labeled improper. Fed.R.Civ.P. 12(b)(6) plays no part in habeas practice. *See Browder v. Director, Illinois Dep't of Corrections*, 434 U.S. 257, 269 n.14, 98 S.Ct. 556, 563 n.14, 54 L.Ed.2d 521 (1978).

the Act.[4] *See United States ex rel. Williams v. Brantley*, 502 F.2d 1383, 1386 n.3 (7th Cir. 1974); *United States ex rel. Bonner v. Warden*, 422 F.Supp. 11, 15 (N.D.Ill.1976).

Because McLaren may pursue his rights under the Act, he has not exhausted his state remedies under Section 2254(c).

This opinion nonetheless turns to McLaren's three remaining claims, for they were raised in the Illinois Appellate Court, thus satisfying the exhaustion requirement. Under *Ware v. Gagnon*, 659 F.2d 809, 811 (7th Cir. 1981), a district court "should reach the merits of the exhausted claims where the unexhausted claims are unrelated or frivolous." Unlike the Sixth Amendment contention, McLaren's other assertions may be decided on the state record without further factual development. Moreover the operative facts of those assertions differ materially from those underpinning the right to counsel issue.

One McLaren contention is that the conviction was so lacking in rational evidentiary support as to render it violative of due process. As to such a claim *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979) teaches the standard this Court must apply:

> But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 U.S. [276] at 282 [87 S.Ct. 483 at 486, 17 L.Ed.2d 362] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana*, 406 U.S. [356] at 362 [92 S.Ct. 1620 at 1624, 32 L.Ed.2d 152]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

Lorenzo Rendon, one of McLaren's cronies that night, testified that McLaren asked for and obtained a gun from one of the other men in the group, then shot Martinez. Corroboration was provided by other witnesses, who testified that earlier that evening McLaren had been seen with a gun, and that just after the shooting McLaren was seen fleeing from the scene. It is true that Rendon was impeached at trial by the fact that he had told police at the murder scene a different story that did not inculpate McLaren. But the trial judge as factfinder observed Rendon's demeanor and credibility and chose to credit his sworn testimony over the prior inconsistency. Certainly a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found all the elements of murder established beyond a reasonable doubt.

As for McLaren's Eighth Amendment claim, his chief contention is that as a first offender he was sentenced to a term "grossly disproportionate to the severity of his crime." But *Rummel v. Estelle*, 445 U.S. 263, 271–72, 100 S.Ct. 1133, 1138–39, 63 L.Ed.2d 382 (1980) makes plain that "Outside the context of capital punishment successful challenges to the proportionality of particular sentences is exceedingly rare." Moreover, delineating the sentences for particular crimes is mainly a matter of legislative prerogative (*id.* at 274, 100 S.Ct. at 1139).

---

4. *McClain* held that where defendants' trial and appellate counsel were from the same Public Defender's office, so that appellate counsel would have to argue incompetence of an office-

mate, it would be unfair to enforce the *James* waiver rule. That concept should apply *a fortiori* where the *same* lawyer acted at both levels.

When McLaren was sentenced murder in Illinois was punishable by a minimum term of 14 years (unless the court regarded the nature and circumstances of the offense and history of the defendant as requiring a higher minimum). Ill.Rev.Stat. ch. 38, § 1005–8–1 (1977). Even giving effect to the possibility of parole under Ill.Rev.Stat. ch. 38, § 1003–3–3, the shortest sentence McLaren could have served for murder was seven years (the corresponding figure based on his 20-year minimum sentence is 10 years). When it is considered that McLaren murdered an innocent 16 year old boy in an unprovoked attack, this Court cannot characterize the six years above the minimum sentence imposed by the trial judge (or three years, assuming early parole) as "grossly disproportionate" to the severity of McLaren's crime.

Finally, McLaren argues trial court error in permitting Perea and Roman to invoke their Fifth Amendment privileges as witnesses. Evidence pointed to one of them handing the murder weapon to McLaren. Each was subject to possible indictment as an accomplice to murder at the time of McLaren's trial. Moreover, when Roman took the stand he was under indictment for another murder committed with the gun used by McLaren. Answers to questions posed by McLaren's counsel could also have implicated Roman in that other murder.[5]

No witness may be forced to testify if that testimony presents a real danger of criminal liability to himself. *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 871 (7th Cir. 1979) ("only where there is but a fanciful possibility of prosecution . . . [is] . . . a claim of Fifth Amendment privilege . . . not well taken"). Roman's and Perea's fear of prosecution was anything but "fanciful." Indeed the state prosecutor declined to grant them immunity at the request of McLaren's counsel. Even were the trial judge in error in allowing either to invoke the Fifth Amendment—which this Court does *not* hold—that decision would not rise to the level of denying McLaren due process.

*Conclusion*

This Court determines that no evidentiary hearing is required (Rule 8(a) following Section 2254). McLaren's Sixth Amendment claim is dismissed for failure to exhaust state remedies. As for his remaining contentions, the situation is akin to that under Fed.R.Civ.P. 56[6] where there is no genuine issue as to any material fact and Fairman is entitled to judgment as a matter of law. This Court denies McLaren's petition for a writ of habeas corpus.

---

**5.** Roman admitted he was present at the tavern during the late evening hours of June 1, 1974 and was shot in the leg on that date. Roman declined to testify as to who was with him at that time, who shot him, whether he knew Perea and whether he knew who shot Martinez. Perea testified he was familiar with the tavern but refused to testify as to his presence there June 1 or 2, 1974. Perea further declined to say whether he witnessed a shooting outside the tavern at about 3:30 a. m. June 2. Perea *did* deny having a gun with him on either June 1 or 2 and testified that he did not know who shot Martinez.

**6.** This analogy is apt even though the Federal Rules of Civil Procedure are not fully applicable to habeas proceedings (Rule 11 following Section 2254). Nothing in *Browder* (see n.3) requires a different treatment.