**UNITED STATES of America ex rel. Theodore BACON, Petitioner,**

v.

**Richard DeROBERTIS, Respondent.**

**No. 81 C 5059.**

United States District Court, N. D. Illinois, E. D.

June 17, 1982.

---

Michael B. Brohman, Jenner & Block, Chicago, Ill., for petitioner.

Marcia Friedl, Asst. Atty. Gen., State of Illinois, Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

### SHADUR, District Judge.

Theodore Bacon ("Bacon"), a prisoner at Stateville Correctional Center in Joliet, Illinois, brings this habeas corpus proceeding against Stateville Warden Richard DeRobertis ("DeRobertis"). Both sides have moved for judgment as to Count I of Bacon's two-count petition, the parties having no disagreement on the facts underlying that count.[1] For the reasons contained in this memorandum opinion and order, DeRobertis' motion is granted and Bacon's motion is denied.

### Facts

Bacon was arrested in Florida August 29, 1977 on the charge of having killed his girl friend, Josie Brown ("Brown"), in Chicago in April 1976. After his arrest Bacon was interrogated in Chicago by the Assistant State's Attorney and a police investigating officer in the presence of a court reporter. Bacon never signed the statement that resulted from that session. In part the statement described a heated argument between Bacon and Brown that ended in a physical altercation. According to Bacon he struck Brown several times with an open hand, and she fell and hit her head on the television set. Though Bacon thought she was only unconscious, the impact was actually fatal. Bacon concluded by claiming he loved Brown and her death was a freakish accident.

On September 20, 1977 Cook County Circuit Court Judge Maurice Pompey conducted a preliminary hearing. Based on Bacon's written statement Judge Pompey declined to find probable cause to charge Bacon with murder. Instead Judge Pompey concluded the statement could establish probable cause against Bacon only for involuntary manslaughter.

Nonetheless Assistant State's Attorney Thomas O'Donnell ("O'Donnell") appeared before the Cook County Grand Jury two days later and requested a true bill for murder against Bacon. Before the grand jury the State offered only the testimony of Chicago police officer Harold Kunz, one of the two officers who had brought Bacon back from Florida. During Kunz' grand jury testimony O'Donnell twice referred to Brown's death as a "murder."

---

1. When the briefing on the motions was begun the Attorney General's office was still following a practice of filing motions to dismiss in habeas cases. After publication of this Court's opinion in *United States ex rel. McLaren v. Fairman,* 532 F.Supp. 60, 61 n. 3 (1982), again calling attention to the inappropriateness of such motions in light of *Browder v. Director, Department of Corrections,* 434 U.S. 257, 269 n. 14, 98 S.Ct. 556, 563 n. 14, 54 L.Ed.2d 521 (1978), the Attorney General advised this Court he was abandoning the practice. This Court has treated the parties' current motions as the functional equivalent of cross-motions for summary judgment.

In substantive terms Kunz' testimony said simply that on their trip back from Florida to Chicago, Bacon had admitted to Kunz and his fellow officer that Bacon had struck Brown several times and killed her. O'Donnell did not however disclose to the grand jury either Bacon's statement (with its exculpatory explanation) or Judge Pompey's conclusion from the statement that probable cause existed to charge Bacon only with involuntary manslaughter. Based on the less than candid presentation made to it, the grand jury returned a true bill charging murder.

At Bacon's trial, his statement withheld from the grand jury was part of the evidence submitted to the petit jury, although the trial judge refused to give an instruction on involuntary manslaughter. Bacon was convicted of murder and sentenced to a term of not less than 40 or more than 80 years. Bacon exhausted his state remedies and then brought this habeas action, Count I of which contends O'Donnell violated Bacon's due process rights during the very brief grand jury proceeding by:

> (1) failing to present to the grand jury evidence exculpating Bacon from the murder charge; and
>
> (2) improperly referring to Bacon's offense as "murder."

### Review of Prosecutorial Misconduct · Involving the Grand Jury

O'Donnell's conduct in shielding the relevant facts from the grand jury was frankly outrageous: It was wholly at odds with the principle that the lawyer we are accustomed to call a "prosecutor" is really one whose client, as the caption of state criminal cases says, is the "People of the State of Illinois."[2] But this Court does not sit as an Attorney Registration and Disciplinary Commission to sanction O'Donnell, nor does it occupy the same supervisory role as to Assistant State's Attorneys that it would were comparable misconduct by an Assistant United States Attorney encountered in the Court's own docket.[3] Thus the conclusion that the prosecutor's activities were egregiously wrong marks the beginning rather than the end of the inquiry.

This Court proceeds *arguendo* upon the assumption that habeas review may be available to remedy due process violations committed in the course of state grand jury proceedings. *See United States ex rel. Talamante v. Romero*, 620 F.2d 784, 789–90 (10th Cir. 1980) (where the same assumption was made but the question was specifically not decided, *id.* at 790 n. 6). That proposition is not necessarily self-evident, for the essence of habeas corpus is after all a challenge to the validity of *confinement.* By definition, then, it would seem that for a flaw in state grand jury proceedings to be cognizable in a federal habeas petition, the defect should have been the cause of the petitioner's imprisonment in a but-for sense.

Under that analysis the cases that have *dismissed federal indictments* because of prosecutorial misconduct affecting the grand jury are not really precedents for granting Bacon relief here:

> *United States v. Cederquist*, 641 F.2d 1347, 1352–53 (9th Cir. 1981) (" '[d]ismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way.' [citation omitted]. It must be shown that the prosecutor's conduct significantly infringed upon the ability of the grand jury to exercise its independent judgment.").
>
> *United States v. Ciambrone*, 601 F.2d 616, 623 (2d Cir. 1979) ("prosecutor . . . may not obtain an indictment on the basis of evidence known by him to be perjurious . . . or by leading it to believe that it has

---

2. As EC 7–13 of the American Bar Association Code of Professional Responsibility puts it:

   > The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict.

*See also* ABA Project on Standards for Criminal Justice—The Prosecution Function § 3.6 at 90–91.

3. This is of course said only by way of contrast, and not even to hint that could occur in the United States Attorney's office here.

received eyewitness rather than hearsay testimony.").

*United States v. Kennedy,* 564 F.2d 1329, 1338 (9th Cir. 1977) ("only in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to the grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury.").

*United States v. Roberts,* 481 F.Supp. 1385, 1389–90 (C.D. Cal. 1980) (dismissal justified by a prosecutor's breaching understanding with judge to present *all* evidence exculpating defendant to grand jury and by prosecutor's "unwise and prejudicial remarks").

*United States v. Gold,* 470 F.Supp. 1336, 1345–46 (N.D. Ill. 1979) (prosecutor's conflict of interest voids indictment voted by grand jury even without showing of prejudice).

*United States v. Phillips Petroleum Co.,* 435 F.Supp. 610, 618–20 (N.D. Okl. 1977) (prosecutor's knowledge and withholding of evidence tending to negate defendant's criminal liability, plus the presence of other irregularities in grand jury process, justify dismissal of indictment).

*United States v. DeMarco,* 401 F.Supp. 505, 513–14 (C.D. Cal. 1975) (nondisclosure of "information vital to the grand jury's informed and independent judgment" requires dismissal of indictment).

Bacon's heavy reliance on authorities of that nature is misplaced,[4] for the situation *after* trial and conviction is conceptually very different.

One other factor referred to earlier in this opinion, though not always discussed in the decisions, further diminishes any precedential force of the cases already cited. Federal courts have inherent supervisory power over federal grand juries and federal prosecutors. *See, e.g., Cederquist,* 641 F.2d at 1352; *Roberts,* 481 F.Supp. at 1387, 1389; *Phillips Petroleum,* 435 F.Supp. at 622; *DeMarco,* 401 F.Supp. at 514. Whatever that relationship may rationally justify by way of judicial sanctions in response to federal prosecutors' improprieties,[5] the same response does not automatically extend to the *state* grand jury and the *state* prosecutor.

But that consideration remains secondary to the distinction epitomized by the facts here. Once the trial has taken place—with the information withheld from the grand jury having been part of the grist for the petit jury's mill [6]—the prisoner can scarcely show prejudice from the grand jury's imperfect knowledge. If a jury finds a defendant guilty of murder beyond a reasonable doubt, can he effectively argue that had the same information been put before the grand jury it would have found probable cause only for manslaughter and not for murder? Though the reasoning smacks somewhat of *post hoc, ergo propter hoc,* it defeats Bacon's right to complain in constitutional terms.

It does of course offend one's sense of fundamental fairness to permit a prosecutor to shop for a more receptive ear to expose

---

**4.** This is not to imply that the federal precedents are valueless just because of the different sources of law involved. To the extent that a federal case is grounded solely on the Due Process Clause of the Fifth Amendment (rather than the Grand Jury Clause or some other rationale applicable to the federal government alone), it should have import for the meaning of the Due Process Clause of the Fourteenth Amendment.

**5.** To reverse a conviction after prosecutor misconduct before the grand jury, rather than simply dismissing an indictment before jeopardy attaches, would be much like applying the exclusionary rule to void a conviction. In both cases the court's action is basically prophylactic in character, rather than depending on a proved causal relationship between the misconduct and the result—the conviction.

**6.** Neither the grand jury nor the petit jury was apprised of Judge Pompey's probable cause ruling at the preliminary hearing. Under our system the grand jury is supposed to make its decisions independently. For that reason, nondisclosure of the ruling (involving after all someone else's opinion on the very issue the grand jury is to decide) is hard to characterize as error, let alone as a due process violation. And an expert opinion (even one of a judge) as to guilt or innocence could be admissible at trial, if at all, entirely as a matter of the trial court's discretion (again not the source of a due process violation).

the defendant to a far more serious criminal charge. In the language of *Cederquist,* such conduct can appropriately be viewed as one of the "flagrant cases in which the grand jury has been overreached or deceived in some significant way."

But on the facts now before the Court[7] an untainted conviction has intervened to cause Bacon's present confinement. Under reasonably comparable circumstances (involving perjured testimony before the grand jury but not at trial), *Talamante* found no due process violation on similar reasoning, 620 F.2d at 791:

> The record establishes that Talamante's conviction was not affected by the perjured testimony. *Bracy v. United States* [435 U.S. 1301, 98 S.Ct. 1171, 55 L.Ed.2d 489 (1978) (Rehnquist, J., op. in chambers)]. Even if the perjured testimony had been brought to the attention of the grand jury, it seems highly unlikely, in view of the petit jury's later finding of guilt after a full trial, that the grand jury would have failed to indict based on probable cause. Such negates the inference of constitutional error. *United States v. Ciambrone,* 601 F.2d 616, 625 (2d Cir. 1979).[8]

Only one decision has been found actually *reversing a conviction* for grand-jury-related prosecutorial misconduct, *United States v. Basurto,* 497 F.2d 781, 786 (9th Cir. 1974). *Basurto* relied on cases in which the prosecutor's misconduct (primarily known perjured testimony used at *trial*) tainted the defendant's trial—an obvious ground for undoing the effect of the taint by vacating the conviction and granting a new trial. For the reasons already discussed, this Court does not agree *Basurto* was entirely sound in analogizing the two situations even in the entirely federal context. It will not extend the notion even farther to embrace a habeas corpus attack on a state court conviction.

---

**7.** No view is expressed as to whether the issues posed by Count II of the petition would support issuance of the writ.

**8.** O'Donnell's grand jury reference to Bacon's offense as "murder" could not of course have

*Conclusion*

Effectively the parties' motions as to Count I are analogous to cross-motions for summary judgment. Bacon's is denied and DeRobertis' is granted, for there is no genuine issue as to any material fact and DeRobertis is entitled to a judgment as a matter of law. Bacon's petition for a writ of habeas corpus as to Count I is denied.

tainted the jury's verdict after trial. Absent a prophylactic rule (see n. 5), that misconduct too would come under the "no harm, no foul" doctrine implicit in a but-for constitutional test.