UNITED STATES of America ex rel.
Theodore BACON, Petitioner,

v.

Richard DeROBERTIS, Respondent.

No. 81 C 5059.

United States District Court,
N.D. Illinois, E.D.

Oct. 29, 1982.

Michael Brohman, and Robert L. Graham, Jenner & Block, Chicago, Ill., for petitioner.

Tyrone C. Fahner, Atty. Gen., of State of Ill., Marcia Friedl, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Theodore Bacon ("Bacon"), a prisoner at Stateville Correctional Center in Joliet, Illinois, brings this habeas corpus proceeding against Stateville Warden Richard DeRobertis ("DeRobertis"). With no disagreement on the underlying facts, both sides have moved for summary judgment on Count II, the remaining claim in Bacon's petition.[1] For the reasons contained in this memorandum opinion and order, DeRobertis' motion is granted and Bacon's is denied.

---

1. This Court's June 17, 1982 memorandum opinion and order (the "Opinion") held DeRo- bertis entitled to summary judgment on Count I. 546 F.Supp. 40.

*Facts*

Bacon challenges his conviction of having murdered his girlfriend, Josie Brown ("Brown"), in April 1976. At the trial Bacon's court-reporter-transcribed (though unsigned) statement to an Assistant State's Attorney and a police investigating officer (given about 1½ years after the event and about 2 years before the trial) was introduced into evidence. It contained the following version of events:

1. Bacon and Brown had become embroiled in a long heated argument in the apartment they shared. It escalated into a physical altercation.

2. Bacon slapped Brown several times with an open hand, while Brown flung various objects at Bacon and scratched him several times.

3. During the physical struggle, Brown asked Bacon to stop hitting her and at one point tried unsuccessfully to escape from the apartment.

4. Their fight ended tragically when Brown fell and hit her head on the television set.

5. Thinking she was only unconscious, Bacon placed her on the couch and tried to revive her.

6. After realizing Brown had died, he wrapped the body in a rug and put it behind a couch in the apartment.

7. Three days later he carried the body out to his car, put it in the trunk, drove around for two or three hours and eventually placed the body under a bridge.

Bacon testified to a different story at the trial. He did acknowledge the physical struggle that ended with Brown hitting her head on either the television set or the table. But in total contrast to his pre-trial statement, Bacon testified Brown was not only alive but also conscious and active afterwards. Indeed, Bacon said when he then went to take a bath he heard Brown throwing things and knocking things over, then heard a door slam—and when he came out of the bathroom, she was gone.

Two of Brown's neighbors testified they heard:[2]

1) a man and a woman in Bacon's apartment begin swearing at one another and then start fighting;

2) loud noises during the fight, sounding as though objects were being tossed around the room and "licks [were] being passed";

3) the female at one point asking the male to stop hitting her; and

4) the male at the end of the 1½ hour fight saying "get up, get up."

One of Bacon's friends testified to a conversation with Bacon a few days after the fight, in which Bacon was crying and said he had killed Brown but did not mean to.

One of the police officers who brought Bacon back to Chicago,[3] Harold Kunz, testified as to a conversation with Bacon during the trip. According to Kunz, Bacon admitted he had punched Brown six or seven times when their fight escalated, and that she was killed when she fell striking her head on the television set. Finally Assistant Medical Examiner Yuksel Konakci, who conducted the Brown autopsy, testified she had sustained multiple lacerations, abrasions and bruises on various parts of her body, and her death had resulted from a head injury.

At the close of trial, the judge refused Bacon's request to give an instruction on voluntary manslaughter. Bacon was convicted of murder and sentenced to a term of not less than 40 or more than 80 years.

Having exhausted his state remedies,[4] Bacon brought this habeas action. Count II of Bacon's petition contends his conviction violated his due process rights because:

---

2. This is a summary of their combined testimony. Differences between them were immaterial, and in all main aspects their testimony was virtually identical.

3. Bacon was arrested in Florida some 16 months after Brown's death and returned to Chicago by two Chicago Police Department officers. See the Opinion, 546 F.Supp. at 41–42.

4. Bacon's conviction was affirmed in *People v. Bacon,* 91 Ill.App.3d 673, 47 Ill.Dec. 673, 415 N.E.2d 678 (1st Dist. 1980). Leave to appeal was denied by the Illinois Supreme Court.

1. Evidence adduced at trial was insufficient to establish the requisite mens rea for murder.

2. Bacon's requested instruction on the "lesser included offense"[5] of voluntary manslaughter should have been given.

Neither argument is of constitutional dimensions under the controlling authorities.

### Sufficiency of Evidence

■ To establish the mens rea required for murder under Illinois law, the State must prove[6] (1) Bacon intended to kill or do great bodily harm to Brown or (2) he knew his acts created a strong probability of death or great bodily harm. Ill.Rev.Stat. ch. 38, § 9–1. If the evidence discloses only that Bacon was "acting under a sudden and intense passion resulting from serious provocation," he can be convicted of voluntary manslaughter but not of murder. Ill.Rev. Stat. ch. 38, § 9–2.

■ Under Illinois case law differentiating the two crimes, it is well settled that "serious provocation" may arise from a "mutual combat." See Bacon, 91 Ill.App.3d at 628, 47 Ill.Dec. at 677, 415 N.E.2d at 682.[7] Our Court of Appeals has quoted the definition of "mutual combat" from People v. Matthews, 21 Ill.App.3d 249, 253, 314 N.E.2d 15, 18–19 (3d Dist. 1974) as "one into which both parties enter willingly, or in which two persons, upon a sudden quarrel, and in hot blood, mutually fight upon equal terms." United States ex rel. Peery v. Sielaff, 615 F.2d 402, 405 (7th Cir.1979), cert. denied, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980). Two other conditions must be satisfied as well (id. at 405–06):

1. the accused cannot have instigated the fight; and

2. retaliation by the accused must not be disproportionate to the provocation.

■ But all those tests are for the state court trier of fact. This Court sits neither as a parallel criminal court of first resort nor even in the more rarified atmosphere of the state's reviewing courts. Its function in scrutinizing evidentiary sufficiency in due process terms is very limited indeed. Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979) (emphasis added) teaches such habeas challenges may not be sustained if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

■ In those terms the analysis is over as soon as it begins. Certainly a rational jury could have found beyond reasonable doubt that Bacon killed Brown with the requisite murderous intent, and not actuated by any intense passion triggered by serious provocation. It had only to believe such portions of the evidence as the following:

1. Brown was severely beaten, far out of proportion to the minor scratches sustained by Bacon.

2. She repeatedly pleaded with Bacon to stop striking her.

3. When Brown attempted to flee the apartment, Bacon yanked her back in and continued hitting her.

Indeed the rational jury could have concluded, from the sharp disparity between the last chapter of the episode as told in Brown's pre-trial story and as he told it from the stand, that Brown's entire provocation defense was a fabrication—with all the negative inferences that would convey.

Evidentiary insufficiency is a heavy burden in federal habeas cases at best. And Brown does not approach the "best." Relief must be denied on this score.

### Failure To Give Voluntary Manslaughter Instruction

Bacon's second argument turns the analysis around entirely, at least in the first

---

**5.** See n. 10.

**6.** Any reference to the State's burden of proof of course requires proof beyond a reasonable doubt.

**7.** Despite the use of the disjunctive "mutual quarrel or combat" in other Illinois cases, quarrel without combat is generally insufficient to meet the objective test of serious provocation. See Peery, cited next in the text.

instance. It becomes necessary to consider not whether a rational jury could have returned a guilty verdict on a murder charge, but whether the same jury could rationally have found voluntary manslaughter.

Under Illinois law a trial judge commits reversible error by refusing to give a requested manslaughter instruction "where there is *any* evidence in the record which, if believed by a jury, would reduce the crime from murder to manslaughter." *Bacon*, 91 Ill.App.3d at 678, 47 Ill.Dec. at 677, 415 N.E.2d at 682 (emphasis added). Moreover, once that low evidence threshold is met, the manslaughter instruction must be provided even if inconsistent with the defendant's theory of defense. *See People v. Lockett*, 75 Ill.App.3d 183, 31 Ill.Dec. 122, 394 N.E.2d 38 (5th Dist.1979), *aff'd*, 82 Ill.2d 546, 45 Ill.Dec. 900, 413 N.E.2d 378 (1980).

From this wholly different perspective it could perhaps have been possible for the rational jury to convict of manslaughter rather than murder. Again a brief selection of evidence is constructive:

1. Bacon's unsigned pre-trial statement says Brown threw objects at him and also scratched and slapped him.

2. According to the same statement Bacon responded to Brown's attacks by slapping her[8]—a retaliation arguably proportionate to the "provocation" of slaps and scratches inflicted by Brown.

3. At trial Bacon testified Brown *initiated* the physical fight by slapping him. Finally the jury might possibly infer, if it believed only selective evidence about the fight, Bacon had been consumed by a "sudden and intense passion."

Thus a conviction of voluntary manslaughter might conceivably have been returned. If so, Bacon would arguably have been entitled to an instruction on voluntary manslaughter *under Illinois law*.[9]

8. According to this statement, the last of those slaps caused the victim to lose her balance and strike her head on the television set.

9. This will be assumed only arguendo for the remainder of the discussion, despite the fact the Illinois Appellate Court—confronted with the identical problem and discussing it with care—reached the opposite conclusion. 91 Ill.

Once again such a *state* law determination does not necessarily control the *constitutional* result. On the latter score the applicable case law is somewhat elusive.

*Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1979) recently provided a negative answer to a related question: whether a death sentence may be imposed when the jury was not permitted to consider a verdict on a lesser included non-capital offense for which there was sufficient evidentiary support. As the Supreme Court reasoned (*id.* at 637, 100 S.Ct. at 2389):

While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard. That safeguard would seem to be especially important in a case such as this. For when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.

Such a risk cannot be tolerated in a case in which the defendant's life is at stake. As we have often stated, there is a significant constitutional difference between the death penalty and lesser punishments....

It reserved judgment on the question posed here: whether due process considerations require lesser included offense instructions in a non-capital case.[10] *Id.* 447 U.S. at 638 n. 14, 100 S.Ct. at 2390 n. 14.

App.3d at 679, 47 Ill.Dec. at 678, 415 N.E.2d at 682–83.

10. "Lesser included offense" may be an inapt term for the relationship between voluntary manslaughter and murder under Illinois law. Conceptually the elements of a lesser included offense must form a subset of the elements that form the greater offense. In contrast, the mens

Despite that reservation, *Beck* might be viewed as calling for the same result here. Its analysis identified two significant factors:

    1. the substantial risk of an unwarranted conviction emanating from the unavailability of the "third option"; and

    2. the intolerable costs associated with such an erroneous conviction (given the immeasurable difference between death and the finite prison term that would otherwise have been imposed).

How do those factors apply to this case?

In a sense the risk of an unjustifiable conviction may be equal to or greater than those in *Beck*. Any jury deprived of the "third option" (assuming ample evidentiary support) might be more hesitant to convict if death rather than incarceration followed from a finding of guilt. True enough the cost of an incorrect conviction cannot approach the ultimate cost—death—involved in *Beck*. But it is nevertheless very high. On a voluntary manslaughter conviction Bacon's sentence (now between 40 and 80 years) could not have exceeded 15 years. Ill.Rev.Stat. ch. 38, § 1005–8–1 (1982).

This Court, though, must view *Beck* in Seventh Circuit terms. In our Court of Appeals' pre-*Beck* decision in *Peery*, 615 F.2d at 404, it had said a habeas petitioner, who had challenged the trial court's refusal to give a voluntary manslaughter instruc-tion, carried an "especially heavy" burden "because '[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law'" (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977)). Specifically, *Peery* held (*id.*) the failure to provide a manslaughter instruction does not implicate due process values so long as the "evidence of serious provocation is not so unequivocally strong that failure to give the instruction could be said to have amounted to a fundamental miscarriage of justice."

Just this year—post-*Beck* of course—*Davis v. Greer*, 675 F.2d 141, 145 (7th Cir.1982) reaffirmed the same stringent due process standard, albeit without any discussion of *Beck*. Under the circumstances this Court is constrained to follow the *Peery-Davis* line.[11]

In those terms "the evidence of serious provocation is not so unequivocally strong that failure to give the instruction ... amounted to a fundamental miscarriage of justice." As already indicated in the earlier analysis, the evidence of *any* real provocation, let alone "serious provocation," is hardly compelling. Certainly the Bacon-Brown fight was heavily one-sided, and the harmful blows dealt by Bacon could surely be deemed not "proportionate" to any provocatory actions taken by Brown.[12]

rea element of voluntary manslaughter—a state of mind characterized by intense passion—is not part of (and indeed can be incompatible with) the mens rea requirement for murder. Nonetheless voluntary manslaughter represents a *less severe* alternative to a murder charge. In that sense the current question can be viewed as the same one reserved in *Beck*. After all, any offense that carries lesser sanctions could qualify as the "third option" discussed in *Beck*, regardless of whether it can be technically subsumed within the contours of the more serious offense—so long, that is, as the evidence could rationally support it.

11. Again it should be stressed that this issue would not be reached on the view of the evidence taken by the Illinois Appellate Court (see n. 9).

12. Aside from the allegedly accidental head wound caused by the impact of the television set, the testimony of Assistant Medical Exam-iner Konakci revealed Brown sustained a number of other lacerations and abrasions on her head and other parts of her body. Bacon never denied he intentionally inflicted those injuries. On the other hand, the trial record clearly establishes Bacon sustained nothing worse than scratches on his wrist and forearm. Objects Brown assertedly threw at Bacon (which apparently missed) were not deadly. Finally, the substantial testimony as to Brown's pleas for Bacon to stop hitting her and Brown's attempt to leave the apartment strongly suggests a great disparity between her provocation (if any) and his violent response. In sum, it can scarcely be said "unequivocally" that Bacon and Brown were engaged in a *mutual* combat—a fight in which both parties engage either *willingly* or *on equal terms*. *Peery*, 615 F.2d at 405.

This legal question is closer than that discussed in the first section of this opinion. Upon full consideration, though, any trial court error arguably committed in refusing to give the tendered voluntary manslaughter instruction does not infringe the Due Process Clause.

### Conclusion

There is no genuine issue as to any material fact and DeRobertis is entitled to a judgment as a matter of law on Count II. Bacon's petition for a writ of habeas corpus as to Count II is denied. Because Count I has previously been resolved adversely to Bacon, this action is dismissed with prejudice in its entirety.