Gerald TALAMANTE, Petitioner-Appellant,

v.

Levi ROMERO, Warden, Respondent-Appellee.

No. 79–1328.

United States Court of Appeals, Tenth Circuit.

Argued March 13, 1980.

Decided May 5, 1980.

---

Tova Indritz, Asst. Federal Public Defender, Albuqerque, N. M., for petitioner-appellant.

Andrea Buzzard, Asst. Atty. Gen., State of N. M., Santa Fe, N. M. (Jeff Bingaman, Atty. Gen., and Frank A. Murray, Asst. Atty. Gen., State of N. M., Santa Fe, N. M., with her on the brief), for respondent-appellee.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Gerald Talamante (Talamante) appeals the dismissal with prejudice of his petition for writ of habeas corpus.

Talamante is incarcerated in the New Mexico State Penitentiary. He was convicted by a State court of voluntary manslaughter in October, 1977. Exhaustion of available state remedies concerning the issues raised in this appeal is admitted.[1]

On the evening of July 15, 1977, Talamante shot and killed Moises Martinez in a rural area of Rio Arriba County, New Mexico. Earlier, a group of individuals had gathered in a grove of trees, approximately three miles from Mendanales, New Mexico. Among those individuals were the decedent, Joe Chavez, Ralph Herrera, Donald D. Martinez, Harold Manzanares and Abran Serrano, Jr.

En route home from the gathering, Donald Martinez, the driver of the truck in which the decedent was riding, encountered another vehicle occupied by Ramon Sisneros, Augustine Sisneros and Talamante. What next occurred is unclear. It is certain, however, that Moises Martinez was shot moments after he left his vehicle, which had stopped near the Sisneros vehicle. It was admitted at trial that Talamante inflicted the fatal wound. He claimed, however, that Moises Martinez was the aggressor, and that his (Talamante's) actions were taken in his own defense and in the defense of others in his group.

Shortly after the shooting, another vehicle arrived (the Chavez vehicle). Martinez was laid in this vehicle, and transported to an Espanola, New Mexico hospital, where he died.

Talamante appealed his conviction, raising the precise issues presented here. The New Mexico Court of Appeals affirmed without dissent. [R., Vol. I, pp. 18–20]. Postconviction relief was then sought in the District Court. Talamante was granted leave to proceed in forma pauperis, and counsel was appointed. The matter was referred to a United States Magistrate, who found petitioner's claims to be without merit. The District Court agreed, adopting the Magistrate's findings. The petition was dismissed with prejudice. Timely notice of appeal was filed. We issued a certificate of probable cause.

1. We have noted the possible existence of other issues. These, however, should be presented to the State courts in the first instance. *See: infra* at pp. 791–792.

The issues presented are whether Talamante's constitutional rights were abridged by the prosecution's: (1) suppression of the handwritten statement of Donald D. Martinez, authored shortly after the shooting; (2) use of perjured testimony in obtaining the indictment; and (3) misconduct in final argument before the petit jury.

### The Brady Claim

Donald Martinez testified at Talamante's trial. Other than the petitioner and those occupying the vehicle with him, Harold Manzanares and Donald Martinez were the only percipient witnesses to the shooting.[2] Thus, Martinez' contemporaneous observations were important to the jury's resolution of Talamante's guilt or innocence.

Donald Martinez' testimony, in response to the prosecutor's direct examination, provided a description of the incident. Much of the direct testimony was damaging to Talamante's claim of self-defense and other defense claims. On cross-examination, however, Martinez' ability to accurately perceive and recall the events in question was called into question. In the course of this probing cross-examination, Talamante's counsel learned, for the first time, that Martinez authored a handwritten statement concerning the shooting at the request of an unknown state police officer. A specific demand for the statement was immediately thereupon made by Talamante's counsel. A discussion ensued at the bench. The prosecution assured the Court that it had previously turned over all material in its possession favorable to the defense, and that the existence of the handwritten statement was not known until the witness' revelation on the stand. The Court thereupon denied Talamante's demand for production, and his subsequent motion for mistrial based on the statement's suppression. The parties were ordered to proceed without the statement.

This issue is controlled by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. In *Brady*, the Supreme Court held that the due process of law clause of the Fourteenth Amendment to the United States Constitution forbids the prosecution, in a criminal case from suppressing "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.*, at p. 87, 83 S.Ct. at pp. 1196–1197. This rule, of course, applies to evidence "affecting the credibility of a key prosecution witness." *United States v. Smaldone*, 544 F.2d 456, 458 (10th Cir. 1976), *cert. denied*, 430 U.S. 967, 97 S.Ct. 1648, 52 L.Ed.2d 358 (1977), *quoting, United States v. Harris*, 462 F.2d 1033, 1034 (10th Cir. 1972).

■ The successful establishment of a *Brady* violation requires proof of: "(a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." *Moore v. Illinois*, 408 U.S. 786, 794–795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972). Often, the key element is the "materiality" of the evidence suppressed. Proof of materiality is important because "*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979). Implicit in this requirement is a concern that the suppressed evidence could have affected the jury's determination of guilt. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

■ Due to the large array of evidence which can be considered favorable to the defense, courts have employed a sliding scale analysis in determining what level of materiality must be proven in order to establish a *Brady* violation. *See: United States v. Agurs, supra; United States v. Jackson*, 579 F.2d 553 (10th Cir. 1978), *cert. denied sub nom., Allen v. United States*, 439 U.S. 981, 99 S.Ct. 569, 58 L.Ed.2d 652 (1978). In *Agurs*, the Court announced three levels of materiality: *first*, in those cases in which the prosecution has knowingly used per-

2. According to Martinez' version of the events.

jured testimony, the conviction must be set aside if there exists a reasonable likelihood that the false testimony could have affected the jury's verdict; *second*, where a *pretrial* request has been made for specific evidence, the judgment must be vacated where the suppressed evidence might have affected the outcome of the trial; and *third*, where there has been a general request for *Brady* material or no request at all, the test of materiality is whether "the omitted evidence creates a reasonable doubt [as to the defendant's guilt] that did not otherwise exist." *Id.*, 427 U.S. at p. 112, 96 S.Ct. at p. 2402.[3]

◼ The situation presented in this case falls within the third category of cases. Thus, Talamante's conviction was constitutionally infirm only "if the omitted evidence creates a reasonable doubt [as to his guilt] that did not otherwise exist". *Id.* at p. 112, 96 S.Ct. at p. 2402. Of course, "the burden is on the defendant to establish that the failure to disclose is a denial of due process." *United States v. Jackson, supra*, at p. 560. This standard of materiality is applicable, inasmuch as: (1) there could not have been a *pretrial* request for the evidence; (2) the prosecutor did not know of the evidence's existence prior to its revelation on the witness stand; and (3) when the specific request was made, it was made before the Trial Judge who ordered trial to proceed without the handwritten statement. Our view accords with *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978) (en banc).

◼ We observe that where evidence is inadvertently lost or otherwise unavailable, special scrutiny must be employed in ascertaining whether a due process violation has occurred. *See: United States v. Picariello*, 568 F.2d 222 (1st Cir. 1978); *cf.: United States v. Bufalino*, 576 F.2d 446 (2d Cir. 1978), *cert. denied*, 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978) (Jencks Act). This is not to say, however, that because an

accused has been denied access to evidence that is only arguably favorable, his due process rights have been abridged. *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). With these standards in mind, we hold that the District Court properly denied the issuance of a writ of habeas corpus.

◼ Donald Martinez was exhaustively examined by all interested counsel. The state provided a typewritten, signed statement to the defense before trial. Talamante was accorded the privilege of deposing Martinez prior to trial. Both the typewritten statement and the pretrial deposition were used to effectively impeach Martinez' testimony at trial.

Additionally, "although the good faith or bad faith of the prosecutor is irrelevant if the evidence is material, the good faith or bad faith of the prosecutor may well bear on the materiality determination." *United States v. Disston*, 582 F.2d 1108, 1112 (7th Cir. 1978); *United States v. Picariello, supra*. Here, it is unquestioned that the prosecutor's failure to produce did not involve bad faith. The evidence was simply unknown to both parties. It is fundamental, in our view, that while it may not be reversible error to fail to do so, a prudent prosecutor should inquire of his witnesses, and all personnel known to him to have been involved in the state's investigation of the case, whether any *Brady* material exists. *United States v. Heath*, 580 F.2d 1011 (10th Cir. 1978), *cert. denied, sub nom.* 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979).

In the instant case, perhaps the prosecutor should have inquired further of his investigatory officers relative to *Brady* material. On this record, however, we hold that no *constitutional* error occurred in the failure to produce the handwritten statement. In any event, possible sanctions available, resulting from the prosecution's failure to

---

**3.** We observe that a fourth situation in which *Brady* applies has developed: the prosecution fails to disclose purely impeaching evidence *not directly related to a substantive element of the crime*, absent a specific defense request. In these circumstances, the conviction is fundamentally unfair *only* if the defendant demonstrates that the undisclosed evidence probably would have resulted in an acquittal. *United States v. Jackson, supra; United States v. Anderson*, 574 F.2d 1347 (5th Cir. 1978).

disclose *Brady* material, do not always include the setting aside of convictions. *United States v. Heath, supra,* at p. 1019. Here, the apparent existence of undisclosed evidence was discovered for the first time at trial. It was the Trial Court's decision, not that of the prosecution, to continue without the statement, if, in fact, it could have been found and produced. The availability of the transcript of a pretrial deposition of the witness, (attended by both parties) together with the typewritten, signed statement, did in fact allow the defense to conduct effective cross-examination of Martinez. These facts lead us to hold that Talamante failed in his burden of proof that possession of the additional handwritten statement could have created "a reasonable doubt that did not otherwise exist." *United States v. Agurs, supra,* 427 U.S. at p. 112, 96 S.Ct. at p. 2402.[4]

### Perjured Testimony

Talamante's second contention of error presents issues of first impression in this Circuit. Relying on *United States v. Basurto,* 497 F.2d 781 (9th Cir. 1974), Talamante asserts that he was deprived due process of law when forced to stand trial on an indictment the prosecutor knew to be partially based on perjured, material testimony.

The revelation of perjury occurred during cross-examination, conducted by the defense, of Harold Manzanares on the second day of trial. Manzanares, a crucial witness, was standing next to the victim when he was shot. In the course of his testimony before the grand jury, Manzanares related that Abran Serrano, Jr., another witness placed at the scene, passed out in the Chavez vehicle. Thus, under this version of the evidence, Serrano could not have been an eyewitness to the shooting. Although it is not clear, we assume that Serrano did not testify before the grand jury.

Following rendition of the indictment, Serrano testified at a pretrial deposition that he was in the vehicle occupied by Donald Martinez, Harold Manzanares, and the victim, Moises Martinez. Serrano stated that he was told by other witnesses to say that he passed out in the Chavez vehicle.

Manzanares, after repeated questioning by the defense, admitted perjury before the grand jury concerning Serrano's location. Serrano testified in rebuttal as to the circumstances surrounding the shooting. Consistent with his deposition, he admitted being a percipient witness to the shooting. Another witness, Ralph Herrera, testified that Serrano was in Moises Martinez' vehicle just prior to the shooting. However, Donald Martinez, Joe Chavez and Augustine Sisneros testified that Serrano was not in the victim's truck. Chavez and Martinez pinpointed Serrano's location as the Chavez vehicle.

The primary function of a grand jury is not to determine the truth of charges brought against an accused, but rather to determine whether there is probable cause to believe them true, thus requiring the accused to stand trial on the merits. *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Bracy v. United States,* 435 U.S. 1301, 98 S.Ct. 1171, 55 L.Ed.2d 489 (1978) (Rehnquist, J., Op. in chambers). Under some circumstances, where a state has chosen to provide grand juries, it must ensure that their selection and operation "hew to federal constitutional criteria". *Carter v. Jury Commission,* 396 U.S. 320, 330, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970) (qualifications for selection of grand jurors). Thus, Talamante seemingly argues that the holding of *Basurto,* based on the Due Process clause of the Fifth Amendment,[5] should be made applicable to the states via the Fourteenth Amendment

4. We observe that the Court in *Agurs* adopted a less demanding test in determining whether failure to produce *Brady* material would result in sanctions than the criterion employed in assessing claims under the Jencks Act, 18 U.S.C. § 3500. *See: United States v. Beasley, supra,* at p. 630.

5. If such a right exists, we observe that it may also be tied to an accused's right to indictment by grand jury. U.S.Const. Amend. V.

for purposes of this habeas corpus proceeding. Our resolution of this issue is not required, however. Assuming that we were to follow the *Basurto* line of cases,[6] Talamante failed to establish the existence of a due process violation. *Basurto* requires proof of: (1) the rendition of an indictment which the government *knows* is based on partially perjured testimony; and (2) perjured testimony which is material. *Under its supervisory power*, the Court also noted that whenever the prosecutor learns of any perjury committed before the grand jury, he should immediately inform the court, all interested counsel, and the grand jury, so that appropriate action can be taken. *United States v. Basurto, supra*, at p. 785. *See also: United States v. Bracy*, 566 F.2d 649, 654–655 (9th Cir. 1977), *appl. for stay denied*, 435 U.S. 965, 98 S.Ct. 1603, 56 L.Ed.2d 57; 435 U.S. 1301, 98 S.Ct. 1171, 55 L.Ed.2d 489 *cert. denied*, 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 109 (1978).[7]

In the instant case, the State District Court Judge, cognizant of the *Basurto* decision, held an evidentiary hearing on Talamante's motion for new trial. Following this hearing, during which the assistant district attorney in charge of the prosecution was summoned and examined by all parties, and Court ruled:

THE COURT: The motions will be denied. So far as the testimony at the Grand Jury, of Harold Manzanares, where he said that Serrano was in the car behind him, in the Chavez' car, passed out, this goes to the location of a possible witness to the incident. It doesn't go to the essential facts upon which the jury, I feel, found or didn't find, or as in this case, found probable cause. I don't feel, looking at the entire picture, that there was any misconduct whatever on the part of the District Attorney in presenting witnesses who may have had different stories as to the location of Abran Serra-

no. The State must present its witnesses as it finds them and, apparently, as has been shown here, the State, through its District Attorney or Assistant District Attorney, maybe at a point of the trial, appreciating that there would be inconsistencies on this one factor, that is, the location of Abran Serrano, properly refrained from attempting to influence these witnesses to change their stories.

Manzanares, obviously did [lie] from the Grand Jury to the trial stage but, at the trial, he apparently told the truth, because that—the statement that he made at the trial conformed with the statement of Serrano. It may have differed with the memory of Chavez and Martinez, . . . Defendant has had a fair trial and I don't think that these grounds advanced at this time support the setting aside of the finding of the jury.

[R., Vol. V., pp. 794–796].

The record shows, and Talamante does not dispute, that the fact finding procedure employed by the State court was adequate to afford him a full and fair hearing on the issues surrounding this claim. Thus, while we must independently review the record, the State court's findings of fact are presumed correct. 28 U.S.C. § 2254(d). *See also: McKee v. Page*, 435 F.2d 689 (10th Cir. 1970); *Cindle v. Page*, 424 F.2d 509 (10th Cir. 1970).

■ We observe that the evidence clearly supports the trial court's determination that the prosecution was not aware of Manzanares' false testimony until after trial had begun. Thus, this is not a case where knowing use of perjured testimony occurred. While it does not appear that the prosecutor informed the Court and counsel after he first became aware of the false testimony, still we do not consider this to give rise to constitutional error. Manza-

---

6. An issue we do not decide.

7. We observe that *United States v. Bracy, supra*, narrowed the reach of *Basurto* and also questioned its viability in light of *United States v. Agurs, supra*. We agree, and add that Mr. Justice Rehnquist's in chambers opinion in *Bra-*

cy, also confirms our suspicions, *Bracy v. United States*, 435 U.S. 1301, 98 S.Ct. 1171, 55 L.Ed.2d 489 (1978) (Rehnquist, J., op. in chambers). *See also: United States v. Cathey*, 591 F.2d 268 (5th Cir. 1979).

nares' perjury was exposed on cross-examination and exhaustively explored. Serrano was called as a witness and examined thoroughly by all interested counsel. Serrano's testimony, even if viewed in the light most favorable to the petitioner, was damaging. It could only have prejudiced Talamante's interests before the grand jury.

We consider the perjured testimony immaterial. The perjury was recanted at trial. Serrano was exhaustively examined. The record establishes that Talamante's conviction was not affected by the perjured testimony. *Bracy v. United States, supra.* Even if the perjured testimony had been brought to the attention of the grand jury, it seems highly unlikely, in view of the petit jury's later finding of guilt after a full trial, that the grand jury would have failed to indict based on probable cause. Such negates the inference of constitutional error. *United States v. Ciambrone*, 601 F.2d 616, 625 (2d Cir. 1979). This was not a case where the recanted testimony could possibly have lead to the discovery of evidence *clearly tending* to absolve the accused.

If Talamante's claim is read to call into question the adequacy of the evidence supporting indictment, such is not availing. *United States v. Kysar*, 459 F.2d 422 (10th Cir. 1972); *United States v. Ciambrone, supra.* Any claim of known use at trial of perjured testimony is likewise unsupported in the record. No constitutional error occurred in connection with petitioner's perjured testimony claim.

### Prosecutorial Misconduct

During the State's closing argument, the prosecutor, in response to the defense's closing argument, stated:

. . . if there was no evidence to support those two charges, you wouldn't be sitting here, right now, because there is an operation in the law which takes care of a case for which there is no evidence.

.[R., Vol. V., p. 757].

Counsel for Talamante immediately objected and moved for mistrial. The motion was denied and the jury was specifically instructed to disregard the comments. [R., Vol. V, pp. 757–758].

■ Talamante contends that these remarks suggested to the jury that the defendant was guilty from the mere fact that he was being prosecuted. *See: Devine v. United States*, 403 F.2d 93 (10th Cir. 1968), *cert. denied*, 394 U.S. 1003, 89 S.Ct. 1599, 22 L.Ed.2d 780 (1969). We agree that the comments in question were improper. Even so, we hold that the error did not rise to the level required for the issuance of habeas corpus relief. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Young v. Anderson*, 513 F.2d 969 (10th Cir. 1975).

Our record review of the closing arguments presented by the prosecution and the defense convinces us that there exist other serious issues which must be first presented to the State courts prior to our resolution. We direct attention to the prosecution's final closing arguments. The record reflects the prosecutor's use of the following language immediately prior to submission of the case to the jury:

Ladies and gentlemen, based upon the instructions and based upon the evidence, your duty, in light of this evidence, ladies and gentlemen, is to convict this Defendant of the crime of which he is charged. He is guilty and he knows it. It is your duty, ladies and gentlemen, however unpleasant you may find it, it's your duty to ascertain the truth and the truth in this case, ladies and gentlemen, is second degree murder with a firearm enhancement.

Thank you very much for your time and your patience.

[R., Vol. V., pp. 764–765].

No defense objection was lodged to these remarks.

We do not here render any opinion on the merits as to the existence of clear error in the prosecutor's argument, either singularly or in combination with other statements.[8]

---

8. *See: United States v. Rios*, 611 F.2d 1335 (10th Cir. 1979): *United States v. Bess*, 593 F.2d 749 (6th Cir. 1979). *Compare: Young v. Anderson, supra.*

This is, in the first instance, a matter for State court review. *Smith v. Gaffney*, 462 F.2d 663 (10th Cir. 1972).

WE AFFIRM.