**UNITED STATES of America**

v.

**Thomas LICIARDELLO, et al.**

**Criminal Action No. 14–412.**

United States District Court, E.D. Pennsylvania.

Signed March 20, 2015.

Anthony Wzorek, United States Attorney, Maureen McCartney, U.S. Dept of Justice, Philadelphia, PA, for Plaintiff.

Burton Rose, Jeffrey M. Miller, Nasuti & Miller, Philadelphia, PA, for Thomas Liciardello, et al.

### MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

In July 2014, six then-Philadelphia narcotics officers were indicted with charges of conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and various related offenses. In preparation for trial, Defendant John Speiser has moved a second time to quash the indictment, arguing that it was based in part on material perjury. Because the alleged perjury is immaterial, the Court will deny the motion.

## I. BACKGROUND

On July 29, 2014, a grand jury indicted six defendants—Thomas Liciardello, Brian Reynolds, Michael Spicer, Perry Betts, Linwood Norman, and John Speiser—with charges of RICO conspiracy and various related offenses.[1] The indictment listed as "overt acts" twenty-two separate "epi-

sodes" undertaken by one or more of the defendants. It was alleged that Speiser participated in episodes 13 (involving victim C.C.), 17 (involving victim L.S.), and 22 (involving victim M.P.). All defendants pleaded not guilty. Jury selection began on March 17, 2015, and concluded on March 19, 2015. Opening arguments are set for March 30, 2015.

Speiser moved to quash the indictment on December 1, 2014. ECF No. 210. The Court denied this motion on February 23, 2015, holding that (1) a pretrial motion is an impermissible vehicle under the circumstances for challenging the sufficiency of the Government's evidence; (2) the indictment properly invokes the jurisdiction of this Court; and (3) an omission can constitute a violation of 18 U.S.C. § 1519, which is not void for vagueness as to Speiser. ECF Nos. 275, 276.

On March 6, 2015, the Government moved to withdraw counts 4 and 22 and episodes 19 and 20 in count 1 of the indictment. ECF No. 292. The Court granted this motion at a hearing on March 9, 2015, after Defendants indicated that they had no objections. ECF No. 300.

On March 13, 2015, the Government moved to withdraw prosecution on counts 18 and 21 and episode 13 of count 1 of the indictment, as well as to withdraw W.L. as a victim in count 2 and the related overt acts in paragraphs 81 through 84. ECF No. 313. Speiser and Liciardello objected. ECF Nos. 323, 325. After a hearing on the matter, the Court overruled their objections and granted the Government's motion. ECF No. 336.

## II. SECOND MOTION TO QUASH THE INDICTMENT

Speiser now moves a second time to quash the indictment (ECF No. 323),[2] ar-

---

1. Those offenses include Hobbs Act robbery, Hobbs Act extortion, use of a firearm during a crime of violence, conspiracy to violate civil rights (through use of excessive force), depri-

· vation of civil rights, falsification of records, and possession with intent to distribute 500 grams or more of cocaine.

guing that it must be dismissed because it was based in part upon the perjured grand jury testimony of Government witness C.C.—the alleged victim involved in episode 13, which the Government has withdrawn from the indictment.[3]

### A. Legal Standard

In *United States v. Basurto,* 497 F.2d 781 (9th Cir.1974), the Ninth Circuit held that a defendant's Fifth Amendment rights are violated when he must stand trial on an indictment which (1) the Government knows is based partially on perjured testimony, (2) the perjured testimony is material, and (3) jeopardy has not attached. *Id.* at 785. The Ninth Circuit later noted that evidence of perjured testimony must go beyond mere speculation, and suggested that the defendant must show that the Government had a reason to believe the testimony was perjured. *United States v. Claiborne,* 765 F.2d 784, 792 (9th Cir. 1985), *abrogation on other grounds recognized by United States v. Hernandez,* 312 Fed.Appx. 937, 938 (9th Cir.2009).

Some circuits have adopted *Basurto* in part. *See United States v. Adamo,* 742 F.2d 927, 940 (6th Cir.1984) (agreeing that prosecutors cannot knowingly use perjured testimony at any point in the prosecution of a case, but declining to require a prosecutor to seek a superseding indictment upon learning of material perjury before the grand jury); *United States v. Ciambrone,* 601 F.2d 616, 623 (2d Cir.1979) (citing *Basurto* for the principle that a prosecutor "may not obtain an indictment on the basis of evidence known to him to be perjured")

Other circuits have declined to decide whether to adopt the rule of *Basurto* because the facts would not warrant relief. *See, e.g., United States v. Rodriguez,* 765 F.2d 1546, 1559 (11th Cir.1985) (finding no evidence that the prosecutor knew of the perjury—even though the prosecutor did know that the polygraph examiner disbelieved the witness's statements—and holding that the testimony was immaterial because the appellant was acquitted on the relevant count); *United States v. Flaherty,* 668 F.2d 566, 584–85 (1st Cir.1981) (determining that something that falsehoods were not material to the case); *Talamante v. Romero,* 620 F.2d 784, 790–91 (10th Cir.1980) (holding falsehoods immaterial because the witness recanted his perjury and told the truth at trial); *United States v. Cathey,* 591 F.2d 268, 272 (5th Cir.1979) (concluding that there was no evidence of perjury and that the alleged falsehoods were immaterial).

The Third Circuit has cited *Basurto* once. In a nonprecedential opinion, the court noted the rule of *Basurto,* but concluded that the appellant in that case was not entitled to relief because the district court did not clearly err in deciding that no perjury had occurred. *United States v. Rodriguez,* 88 Fed.Appx. 548, 549 (3d Cir. 2004). And in *United States v. Hargrove,* No. 99–232–01, 2003 WL 22232853, at *9 (E.D.Pa. Aug. 1, 2003), Judge DuBois held that *Basurto* was inapplicable because the alleged perjured testimony concerned was not an element of the offenses charged, and thus was immaterial.

---

**2.** Defendants Reynolds (ECF No. 326), Spicer (ECF No. 327), Betts (ECF No. 324), and Norman (ECF No. 328) joined the motion to quash.

**3.** The Government indicated in open court on March 19, 2015, that it chose to withdraw

episode 13 from the indictment after learning of a civil lawsuit filed by C.C. and determining that it could not proceed with him as a witness due to inconsistencies between his story in his civil suit and his story in this case.

### B. *Analysis*

■ The first question the Court must decide is the legal rule that applies to this case. Speiser argues that under *Basurto*, he need not show that the Government had any knowledge that perjury occurred— only that there was perjury[4] and it was material. The Government disagrees, arguing that *Basurto* requires knowledge on the part of the Government.

■ Both Speiser and the Government are correct, to some degree. *Basurto* clearly requires that the Government must know that the testimony at issue is perjured. *See Basurto*, 497 F.2d at 785 (holding that a defendant must not be forced "to stand trial on an indictment which the government *knows* is based partially on perjured testimony" (emphasis added)). As Speiser has acknowledged, no court has yet held that a defendant need only show that the Government was negligent or acted with reckless disregard or willful blindness by failing to uncover facts that would have called a witness's testimony into question.[5] The Court declines to so hold in this case.

■ But Speiser also argues that what the Government knows *now* is also sufficient to satisfy the *Basurto* standard, and there, Speiser is correct. If before the verdict was returned, the Government never learned of the information that caused it in this case to withdraw episode 13 from the indictment, and the case proceeded to verdict on an indictment still partially based on C.C.'s testimony, the Government would not have "known" of perjury for the purposes of *Basurto*. But because the purpose of the *Basurto* rule is to prevent a defendant from *standing trial* on an indictment the Government knows to be based on perjured testimony, the rule would apply, for example, if the Government learned of the perjury on the last day of trial and said nothing. In other words, the Government cannot proceed to trial on an indictment it knows is at least partially based on perjured testimony, even if the Government did not know that the testimony was perjured when it was offered. Therefore, though there is no evidence that the Government knew C.C.'s grand jury testimony was problematic before he gave it,[6] it is sufficient that the Govern-

---

4. Speiser's submission, while alleging perjury, does not address the elements of the crime of perjury. The Government argues that C.C.'s grand jury testimony was not perjured, but was merely inconsistent with his prior testimony in a state court proceeding, as well as with statements made in a civil lawsuit.

An individual commits perjury when he is under oath and "knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration." 18 U.S.C. § 1623(a).

Mere inconsistencies are not necessarily proof of perjury, therefore, as the witness must know he is lying. Moreover, the declaration must be material, so not even all intentional falsehoods rise to the level of perjury.

For the purposes of ruling on this motion, the Court will assume that C.C.'s testimony was perjured, without expressing any opinion on the matter. As a result, a review of the statements that Speiser alleges were perjured is unnecessary.

5. It is true that *Claiborne* suggests that the Government need only have a "reason to believe" the testimony was perjured, but it is unclear whether that language encompasses the situation here. *See* 765 F.2d at 792.

6. 6 For this reason, Speiser's argument regarding the email from C.C.'s counsel to Government counsel (Speiser Mot. Ex. 12) is irrelevant. That is, the email supports the idea that the Government knew of the problems with C.C.'s grand jury testimony only if Government counsel knew of C.C.'s civil lawsuit at the time the email was sent, which they did not. Without knowledge of that civil lawsuit, in fact, the email actually suggests that the Government had good reason to believe C.C. was telling the truth before the grand jury.

ment knows *now*.[7]

██ However, although Speiser has satisfied *Basurto*'s knowledge requirement, he has not proven materiality. Courts have held that if the problem with the allegedly tainted testimony is cured, any perjury is immaterial. In *Talamante,* for example, the Tenth Circuit held that although a witness perjured himself before the grand jury, the perjury was immaterial because he recanted his perjury and told the truth at trial. 620 F.2d at 791. In *Rodriguez,* the Eleventh Circuit held that a defendant had not been prejudiced by perjured testimony because he was acquitted on the count to which the testimony related. 765 F.2d at 1559. And in *Claiborne,* the Ninth Circuit held that even if a witness had perjured himself before the grand jury, that perjury was immaterial because the Government dismissed the counts relating to that witness's testimony before trial began. 765 F.2d at 792.

As in *Claiborne,* when the Government in this case learned of problems with C.C.'s testimony, it chose to withdraw the portions of the indictment that involved C.C. Accordingly, the indictment—which still charges the same offenses—is no longer based on perjured testimony; and so the fact that C.C.'s testimony occurred at all is immaterial because the defendants will not be *standing trial* on an indictment based in part on perjured testimony.[8]

██ Speiser also argues that C.C.'s testimony is material because that testimony was the only evidence that implicated him before the grand jury. To the extent that

this argument is a challenge to the sufficiency of the evidence, the Court has already explained, *see* ECF No. 275, that in the Third Circuit, "a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis,* 230 F.3d 659, 660 (3d Cir.2000).

But even setting aside the *DeLaurentis* rule, C.C.'s testimony is not the only evidence placing Speiser at the scenes of the crimes alleged in the indictment: though M.P. and L.S. may not have named Speiser to the grand jury, Speiser himself wrote the police report for the M.P. incident described in episode 22, *see* Speiser First Mot. Quash Ex. 2, ECF 210–2, and Liciardello's police report for the L.S. incident described in episode 17 states that Speiser was there, *see* Exhibit 1. Moreover, as the Government argues:

> The return of the indictment by the grand jury with Speiser listed as a coconspirator ... demonstrates their finding that the defendant knowingly and willfully agreed that he or a coconspirator would commit at least two racketeering acts. That finding is corroborated by the return of Count 26 charging Speiser with the false report as to the M.P. episode. In addition, beyond the M.P. and L.S. episodes, Speiser is responsible for all other acts committed by his co-conspirators,[10] whether he was present or not.

Gov't Resp. 7 n. 3. In other words, regardless of whether the grand jury was pre-

---

7. Again, the Court is assuming, for the purposes of this motion only, that C.C. *did* perjure himself, which the Government disputes. *See supra* note 4.

8. For this reason, the materiality (or lack thereof) of the particular content *of* C.C.'s perjured statements is irrelevant.

10. The Court notes, of course, that Speiser is responsible for acts committed by his coconspirators only if they are within the scope of the conspiracy charged.

sented with either police report mentioned above, and even though M.P. did not name Speiser before the grand jury, the grand jury still returned a specific count against Speiser concerning the M.P. episode (Count 26)—a count that also corroborates the grand jury's finding that Speiser was a coconspirator (Count 1). Therefore, the evidence does not support Speiser's assertion that the grand jury would not have returned an indictment against him but for C.C.'s testimony.

Accordingly, any perjury C.C. may or may not have committed before the grand jury was immaterial, regardless of the Government's knowledge, and Speiser's motion must be denied.

## II. CONCLUSION

For the foregoing reasons, the Court will deny Speiser's Second Motion to Quash the Indictment. An appropriate order follows.

Exhibit 1

| Philadelphia Police Department Investigation Report | A - Approved |
|---|---|
| DC Number 2010-17-046436<br>Report No 2010-17-046436.1<br>Report Date 3/10/2011 10:27:14 AM<br>Report Type Investigation Report (75-49) | Page 1 of 4 |

**Unit Control#: 2010-7403-000704-2**

| | | | |
|---|---|---|---|
| Classification | 1803 - NARCOTIC DRUGS SELLER SYNTHETICS (DEMEROL METHAD) | Occurred On | 8/18/2010 11:28:00 PM |
| Previous Classification | 3413 - RADIO ASSIGNMENT INFORMATIONAL REQUEST | Reported On | 8/18/2010 11:28:31 PM |
| Location of Occurrence | 3300 Grays Ferry Ave | Disposition / Status | 2 - Arrest |
| District of Occurrence | 17th District PSA 2 | Clearing Unit | 7403 - Narcotics Field Unit South |
| Responding Officer | P/O THOMAS LICIARDELLO (PR 221845 / #4383) | Investigating Officer | P/O THOMAS LICIARDELLO(PR 221845/ #4383) |
| Assisted By | | Unit/Unit Preparing | 7403 - Narcotics Field Unit South |
| Related Court | | | |

## Report Approval

| | | |
|---|---|---|
| Completed | 3/10/2011 10:27:14 AM | P/O THOMAS LICIARDELLO (PR 221845 / #4383) |
| Approved | 3/10/2011 10:28:58 AM | Sgt JOSEPH MC CLOSKEY (PR 188924 / #0331) |

## Report Summary

DURING THE DAYS OF 8-16-10 AND 8-18-10 P/O LICIARDELLO #4383, P/O REYNOLDS #4268 AND P/O SPEISER #7169 RECEIVED INFORMATION FROM A RELIABLE SOURCE OF INFORMATION ABOUT A BM NAMED LENNY WHO WORKS FOR THE PHILADELPHIA WATER DEPARTMENT WHO IS SELLING LARGE AMOUNTS OF ENDOCETS AND XANEX. THE SOURCE STATES THAT LENNY LIVES IN THE WEST PHILADELPHIA SECTION OF THE CITY OF PHILADELPHIA. THE SOURCE STATES THAT HE/SHE COULD SET UP A PURCHASE OF 200 ENDOCETS FROM LENNY.

DURING THE DAYS OF 8/16/10 TO 8/18/10 (EXACT TIME AND DATE BEING WITHHELD TO PROTECT THE IDENTITY OF THE SOURCE). THE SOURCE ALONG WITH P/O WALKER #3730 WENT TO THE AREA OF 34TH AND GRAYS FERRY AVE WHERE IT WAS PRE DETERMINED THAT THE PURCHASE OF THE 200 ENDOCETS WOULD TAKE PLACE. P/O WALKER WAS ARMED WITH $600 WORTH OF PRE RECORDED BUY MONEY. WHILE P/O WALKER WAS THERE AT THE PRE ARRANGED LOCATION P/O WALKER WAS APPROACHED BY A BM LATER ID AS LEONARD SAMMONS WHO WAS OPERATING A WHITE HONDA SUV PAH IMP-2558. SAMMONS PULLED NEXT TO P/O WALKER VEHICLE AT WHICH TIME P/O WALKER HAD A DRUG RELATED CONVERSATION WITH SAMMONS AND HANDED SAMMONS THE $600 WORTH OF PRE RECORDED BUY MONEY. SAMMONS IN RETURN HANDED P/O WALKER A WHITE PLASTIC BAG WHICH WAS FOUND TO CONTAIN 186 WHITE ROUND PILLS EACH INSCRIBED WITH "ENDO 603" ALLEGED ENDOCETS. SAMMONS LEFT THE AREA AT WHICH TIME HE WAS FOLLOWED TO 921 EDGEMORE RD AT WHICH TIME HE WAS OBSERVED BY P/O SPICER #5180 AND P/O BETTS #5761 ENTERING THE LOCATION WITH A KEY. THE INVESTIGATION CAME TO A CLOSE AT THIS TIME. LATER AT HQ'S P/O WALKER HANDED OVER THE 186 PILLS WHICH WERE PLACED ON PR# 2932169 AND SUBMITTED TO THE PHILADELPHIA POLICE CHEM LAB FOR FURTHER ANALYSIS.

ON 8/24/10 P/O LICIARDELLO #4383, P/O REYNOLDS #4268 AND P/O SPEISER #7169 RECEIVED INFORMATION THAT SAMMONS WAS GOING TO BE DELIVERING A LARGE AMOUNT OF PILLS TO THE AREA ONCE AGAIN OF 34TH AND GRAYS FERRY AVE. POLICE AT THIS TIME SET UP SURVEILLANCE AT THE PHILADELPHIA WATER DEPARTMENT LOT LOCATED ON THE 3400 BLK OF FOX ST AT WHICH TIME POLICE OBSERVED THE SAME WHITE HONDA SUV PARKED IN THE EMPLOYEE PARKING LOT.

AT APPROX 4:00PM POLICE OBSERVED SAMMONS EXIT THE WATER DEPARTMENT BUILDING AT WHICH TIME HE ENTERED INTO THE HONDA AND WAS FOLLOWED TO 921 EDGEMORE RD WHERE HE ENTERED THE LOCATION USING A KEY.

AT APPROX 4:50PM SAMMONS EXITED 921 EDGEMORE RD WITH A B/F LATER ID AS DEBRA MASON. SAMMONS WAS CARRYING BROWN BAG IN HIS LEFT HAND. SAMMONS ENTERED INTO THE DRIVER SIDE OF THE HONDA AND MASON ENTERED INTO THE PASSENGER SIDE OF THE HONDA AT WHICH TIME BOTH WERE FOLLOWED TO 34TH ST JUST NORTH OF GRAYS FERRY AVE, AT WHICH TIME POLICE APPROACHED THE VEHICLE AT WHICH TIME P/O REYNOLDS #4268 OBSERVED SAMMONS LOOK INTO THE DIRECTION OF POLICE AND SAMMONS DISCARDED THE BROWN BAG TO THE FLOOR OF THE PASSENGER SIDE OF THE VEHICLE AT THE FEET OF MASON. THE BAG OPENED AT WHICH TIME POLICE OBSERVED NUMEROUS WHITE PILLS ON THE FLOOR OF THE VEHICLE. SAMMONS AND MASON WERE PLACED INTO CUSTODY AND THE PILLS WERE RECOVERED AND FOUND TO BE A BROWN PAPER BAG CONTAINING APPROX 201 WHITE ROUND PILLS EACH INSCRIBED WITH "ENDO 602" ALLEGED ENDOCETS WHICH WERE IDENTICAL TO THE PILLS PURCHASED BY P/O WALKER.

ON 8/24/10 SW# 152105 WAS EXECUTED ON 921 EDGEMORE RD WITH ENTRY BEING MADE WITH KEYS RECOVERED FROM SAMMONS. RECOVERED IN THE 2ND FLOOR MIDDLE BEDROOM WAS (1) AMBER PILL BOTTLE WITH THE LABEL SCRATCHED OFF CONTAINING 4 VICODINE, AND (1) AMBER PILL BOTTLE CONTAINING 121 BLUE XANEX WITH THE LABEL IN THE NAME OF MARIA SANABRIA. THERE WAS 4 AMBER PILL BOTTLES WITH DIFFERENT NAMES, TALLY WORK, SOCIAL SECURITY LETTER, AETNA BILL AND INSURANCE LETTER ADDRESSED TO SAMMONS. THERE WAS $507 USC RECOVERED FROM SAMMONS PERSON.

PR# 2932169 (NARC PURCHASED)
PR# 2932176 (NARC)
PR# 2932177 (CASH)
PR# 2932178 (PROOF/PARA)

NetRMS_CR.rt v21

Printed For:
Printed, March 22, 2011

GOVERNMENT EXHIBIT 17.6( )

## Philadelphia Police Department Investigation Report

| | |
|---|---|
| DC Number | 2010-17-046436 |
| Report No | 2010-17-046436.1 |
| Report Date | 3/10/2011 10:27:14 AM |
| Report Type | Investigation Report (75-49) |

## A - Approved
Page 2 of 4

---

**Classification Detail: 1803 - NARCOTIC DRUGS SELLER SYNTHETICS (DEMEROL METHAD)**

| | | | | | |
|---|---|---|---|---|---|
| Location | 070 - Private Residence | | | No Prem Entered | |
| Offense Completed? | YES | Using | | Entry Method | |
| Hate/Bias | None (No Bias) | Criminal Activity | Distributing/Selling | Type Security | |
| Domestic Violence | NO | Weapons/Force | | Tools | |

## Property

| Description | Reported Value | Recovered Value |
|---|---|---|
| Seized (to impound drugs / gambling devices) | | |
| P1 186 percocets | $ | $ |
| 1 186 Dose Units/Items Barbiturates | | |
| License | | |
| VIN or Serial No / OAN / | | |
| Owner | | |
| Recovered On / Location / | | |
| Prop Reprt / Disp | | |
| PCIC/NCIC Notification | | |
| Seized (to impound drugs / gambling devices) | | |
| P2 201 endocets | $ | $ |
| 1 201 Dose Units/Items Barbiturates | | |
| License | | |
| VIN or Serial No / OAN / | | |
| Owner | | |
| Recovered On / Location / | | |
| Prop Reprt / Disp | | |
| PCIC/NCIC Notification | | |
| Evidence | | |
| P3 507 | $ | $ |
| 1 | | |
| License | | |
| VIN or Serial No / OAN / | | |
| Owner | | |
| Recovered On / Location / | | |
| Prop Reprt / Disp | | |
| PCIC/NCIC Notification | | |
| Seized (to impound drugs / gambling devices) | | |
| P4 121 xanex | $ | $ |
| 1 121 Dose Units/Items Barbiturates | | |
| License | | |
| VIN or Serial No / OAN / | | |
| Owner | | |
| Recovered On / Location / | | |
| Prop Reprt / Disp | | |
| PCIC/NCIC Notification | | |
| Seized (to impound drugs / gambling devices) | | |
| P5 4 vicodin | $ | $ |
| 1 4 Dose Units/Items Barbiturates | | |
| License | | |
| VIN or Serial No / OAN / | | |
| Owner | | |
| Recovered On / Location / | | |
| Prop Reprt / Disp | | |
| PCIC/NCIC Notification | | |

## Philadelphia Police Department Investigation Report

DC Number 2010-17-046436
Report No 2010-17-046436.1
Report Date 3/10/2011 10:27:14 AM
Report Type Investigation Report (75-49)

# A - Approved
Page 3 of 4

### Evidence

| P6 | proof para 1 | | | $ | $ |
|---|---|---|---|---|---|

License
VIN or Serial No / OAN /
Owner
Recovered On / Location /
Prop Recpt / Disp
PCIC/NCIC Notification

TOTAL $0 $0

### Witness W1: P/O THOMAS LICIARDELLO (PR 221845 / #4383)

| | | | | | |
|---|---|---|---|---|---|
| Address | | DOB | | Officer Payroll # | 221845 |
| CSZ | | Age / Race / Sex | / / | District / Unit | 7403 - Narcotics Field Unit South |
| Home Phone | | Ethnicity | | SSN | |
| Cell Phone | | Occupation/Grade | | OLN | |
| Beeper | | Employer/School | Philadelphia Police Department | OLN State / Country | / |
| Email | | Emp/Sch Address | One Franklin Sq | | |
| Work Phone | 215 686-1776 | Emp/Sch CSZ | Philadelphia, PA 19106 | | |
| Witness Notes | | | | | |

**Interview Section**

| Interview Date | | Interviewed By | (PR / #) | 75-483 Completed | |
|---|---|---|---|---|---|
| Interview Location | | Others Present | | | |
| Interview Summary | | | | | |

### Arrestee A1: Sammons, Leonard

| | | | | | |
|---|---|---|---|---|---|
| AKA | | DOB | | SSN | |
| Alert(s) | | Age / Race / Sex | 55 / Black / Male | OLN | |
| Address | 921 Edgemore Rd | Ethnicity | Not of Hispanic Origin | OLN State / Country | / United States of America |
| CSZ | Philadelphia, PA 19104 | Place of Birth | | | |
| Home Phone | | Occupation/Grade | | Build | |
| Cell Phone | | Employer/School | | Scars/Marks/Tattoos | |
| Beeper | | Emp/Sch Address | | Teeth | |
| Email | | Emp/Sch CSZ | | Facial Hair | |
| Work Phone | | Height / Weight | / | Complexion | |
| Attire | | Eye / Hair Color | / | Hair Style / Length | / |
| Jewelry | | Artif Body Prst/Aids | | Blood Type | |
| Offender PID | | CBN | | Arrested Date | 8/24/2010 5:15:00 PM |
| Arrest Type | Sight Arrest | Arrested For | 1803 - NARCOTIC DRUGS SELLER SYNTHETICS (DEMEROL METHAD) | Arrest Location | 3400 Grays Ave |
| FBI No | | Arresting Officer 1 | W1 | Booked On | |
| PA SID | | Arresting Officer 2 | | Booked Location | |
| Armed With | 01 - Unarmed | Number of Warrants | | Released Location | |
| Mult Clearance | Not Applicable | Notified | | Released On | |
| Prev Suspect No | | Juvenile Disposition | | Released By | (PR / #) |
| | | | | Release Reason | |
| | | | | Held For | |
| Arrest Notes | | | | | |

**Interview Section**

| Interview Date | | Interviewed By | (PR / #) | 75-483 Completed | |
|---|---|---|---|---|---|
| Interview Location | | Guardian Present | | Miranda Read | |
| | | Others Present | | Miranda Waived | |
| Interview Summary | | | | | |

### Arrestee A2: Mason, Debra

| AKA | DOB | SSN |
|---|---|---|
| | | |

NatRMS_CR.rd v2l

Printed: March 22, 2011 - 10:52 PM

| **Philadelphia Police Department Investigation Report** | **A - Approved** |
|---|---|
| DC Number 2010-17-046436 | |
| Report No 2010-17-046436.1 | |
| Report Date 3/10/2011 10:27:14 AM | Page 4 of 4 |
| Report Type Investigation Report (75-49) | |

| | | | |
|---|---|---|---|
| Alias(s) | Age / Race / Sex | 53 / Black / Female | OLN |
| Address 917 Parker St | Ethnicity | Not of Hispanic Origin | OLN State / Country / United States of America |
| CSZ Philadelphia, PA 19106 | Place of Birth | | |
| Home Phone | Occupation/Grade | | Build |
| Cell Phone | Employer/School | | Scars/Marks/Tattoos |
| Beeper | Emp/Sch Address | | Teeth |
| Email | Emp/Sch CSZ | | Facial Hair |
| Work Phone | Height / Weight / | | Complexion |
| Attire | Eye / Hair Color / | | Hair Style / Length / |
| Jewelry | Artif Body Prt/Aids | | Blood Type |
| | | | |
| Offender PID | CDN | | Arrested Date 8/24/2010 5:15:00 PM |
| Arrest Type Sight Arrest | Arrested For | 1803 – NARCOTIC DRUGS SELLER SYNTHETICS (DEMEROL METHAD) W) | Arrest Location 3400 Grays Ave |
| FBI No | Arresting Officer 1 | | Booked On |
| PA SID. | Arresting Officer 2 | | Booked Location |
| Armed With 01 - Unarmed | Number of Warrants | | Released Location |
| Multi. Clearance Not Applicable | Notified | | Released On |
| Prev. Suspect No. | Juvenile Disposition | | Released By (PR / #) |
| | | | Release Reason |
| | | | Held For |
| Arrest Notes | | | |

**Interview Section**

| | | | |
|---|---|---|---|
| Interview Date | Interviewed By (PR / #) | 75-483 Completed | |
| Interview Location | Guardian Present | Miranda Read | |
| | Others Present | Miranda Waived | |
| Interview Summary | | | |

**Case Facts**

**MO**

**Actions Taken**

### ORDER

**AND NOW,** this 20th day of **March, 2015,** for the reasons set forth in the accompanying memorandum, the following is hereby **ORDERED:**

(1) Defendants Brian Reynolds, Michael Spicer, Perry Betts, and Linwood Norman's Motions to Join (ECF Nos. 326, 327, 324, and 328) are **GRANTED;**

(2) Defendant John Speiser's Second Motion to Quash the Indictment (ECF No. 323) is **DENIED;** and

(3) Defendant Speiser's additional exhibits, provided to the Court during oral argument and attached to this Order, shall be filed as Exhibits 12 and 13 to the Second Motion to Quash (ECF No. 323).

**AND IT IS SO ORDERED.**